IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| NATASHA S. DAVIS o/b/o N.L.C., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 3:10CV714-CSC |
| | ) (WO) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This is a child impairment case. Plaintiff Natasha S. Davis filed this lawsuit on behalf of her son, N.L.C.,[1] to review a final judgment by defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that N.L.C. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

In this case, the ALJ's opinion is replete with philosophy, stereotypical observations about children and synopses of the medical evidence contained in the administrative record; however, it is woefully short on analysis. For the reasons that follow, the court concludes that the Commissioner's decision denying N.L.C. supplemental security income benefits should be reversed and remanded for further proceedings.

## I. STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this

requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec., 3*63 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v.*

3

*Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).  The court must, however, conduct an "exacting examination of the [Commissioner's] conclusions of law." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

## II.  Discussion of the Issues

The plaintiff essentially raises only two issues: (1) whether the ALJ's findings are against the weight of the evidence and (2) whether the Appeals Council erred in failing to remand for review of new and material evidence.

**A.  The ALJ's Findings and the Weight of the Evidence.**  The ALJ referred NLC to Lee Stunts, PhD, for a psychological consultantive examination which was conducted on July 17, 2006.  Dr. Stutts summarized his findings in part as follows:

> N. is an eight-year-old boy who exhibited signs of anxiety and attention problems. However, he also exhibited signs of purposefully missing test items. School input will be important in this case. There was no indication on available records of intellectual functioning impaired at the level of today's test scores or even in the impaired range in general.

(R. at 162)

The ALJ reports what Dr. Stutts puts in his report but does not state the weight he gives to it.  Rather he relies on the state agency psychological evaluation justifying his reliance on it by reference to SSR 96-6p.

> The Childhood Disability Evaluation Form dated August 17, 2006, shows impairments of ADHD; and anxiety (Exhibit 3F). William B. Meneese, Ph.D., a State agency reviewing psychologist, indicated that the claimant's impairment or combination of impairments is severe but does not meet, medically equal, of functionally equal a listing. In the Functional Equivalence

4

> Domains, Dr. Meneese noted that the claimant has no limitation in the areas of acquiring and using information; moving about and manipulating objects; caring for himself; and in health and physical well being. He has a less than marked limitation in attending and completing tasks; and interacting and relating with others. Although this assessment is almost 2 years old, I believe that it remains basically accurate.

(R. at 16)

The ALJ appears to explain why he believe Dr. Meneese's report "remains basically accurate."

> In the present case at bar, the Administrative Law Judge as the independent finder of the facts does not discredit the medical advisors' opinions because he does not find fully credible substantial evidence to discredit them. In this case, the State Agency experts' assessments are fully consistent with the reports of the treating and examining physicians and are found to be credible for the reasons stated therein and throughout the decision.

(*Id.*)

Perhaps, if the ALJ had done more than merely regurgitate the administrative record, he might have found reason to question the stale, 2006 opinion of the medical advisor. In an evaluation completed by N.L.C.'s 5th grade teacher on October 2, 2008, she found that he had marked limitations in acquiring and using information, attending and completing tasks, interacting and relating to others and moving about and manipulating objects. (R. at 123-24). "N. is reading at a <u>below</u> level. In addition to whole class instruction, he receives instruction in two small groups of only five students. He has great difficulty in paying attention in these small groups as well as whole class situations." (R. at 124) In addition, N.L.C.'s grade report for the first nine weeks of 5th grade shows F in language, science and social studies; D in math; C in reading and U [unsatisfactory] in work habits. A notation on the report reads

5

"incomplete work; work not returned." (R. at 127)  In his opinion, the ALJ recites this evaluation, but he discounts it because he concludes that N.L.C.'s actions are "substantially volitional" as opposed to the consequences of an impairment.  But other than disparaging the child because there is some evidence of malingering and because the ALJ believes the child's answers on an IQ test were the product of a desire to obtain disability benefits, the ALJ provides no *reasons* why he finds that the *teacher's* conclusion are unworthy of belief.  In other words, to accept the ALJ's conclusions, the court would have to find that N.L.C. was able to deceive his teacher for the first nine weeks of his 5th grade school year.  Even stating this proposition belies its probable validity.  But that is not the fundamental problem in this case.

The Commissioner's regulations, 20 C.F.R. § 416.926a, govern how the Commissioner determines if a child, whose severe impairment or combination of impairments do not meet or medically equal any listing of impairments, has limitations that functionally equal the listings.  As noted above, the Commissioner considers the child's functioning in six domains.

> When we evaluate your ability to function in each domain, we will ask for and consider information that will help us answer the following questions about whether your impairment(s) affects your functioning and whether your activities are typical of other children your age who do not have impairments.

20 C.F.R. § 416.926a(b)(2).

Those six questions are (1) What activities is the child able to perform, (2) What activities is the child not able to perform, (3) Which of the child's activities are limited or

restricted compared to other children of the same age who do not have impairments, (4) Where does the child have difficulty with activities - at home, in childcare, at school, or in the community, (5) Does the child have difficulty independently initiating, sustaining, or completing activities and (6) What kind of help does the child need to do activities, how much help does the child need, and how often does the child need it. *Id.*

The court will now consider how, if at all, the ALJ approached resolution of these questions. To understand that, it is unfortunately necessary to quote extensively from the ALJ's opinion.

After a long introduction and explanation of the ALJ's views about the distinction between a child's "ability to perform successfully in and out of school" (R. at 20) and a child's behavior, the ALJ pronounces his finding.

> Based on all of the evidence, particularly the medical, psychological and educational evidence in this file, the ALJ finds the claimant's actual behavior or performance to be substantially a willful, voluntary series of actions and not the uncontrollable by product of involuntary psychological disease process.
>
> The ALJ finds that the impairment of the abilities of the claimant to be less than marked.
>
> What indicia do we have that this child has ability? There are many. For one thing, he has gotten some very excellent grades, including 100s in the past. That obviously indicates ability. For another, his standardized testing scores show abilities in the average range. Of course, the claimant has tested at a full scale IQ of 40. Obviously, this is ludicrous. A child with a full scale IQ of 40 can not even be toilet trained. The child obviously purposefully gave obviously wrong and ridiculous answers, which is totally volitional. For what purpose? The most apparent purpose would seem to be to obtain benefits under this particular benefit program. That itself indicates intelligence.
>
> Thus, there is evidence in the file that the claimant has malingered. It takes a

certain amount of knowledge and intelligence to understand and appreciate how pecuniary or financial advantage will be obtained by malingering or faking retardation and to intentionally do so. A child who is truly a "simpleton" would not likely have the knowledge, understanding, insight, intelligence or even a motive or desire to intentionally malinger on examination.

The claimant has recently made grades of D's and F's for the 1st nine weeks while in the 5th grade . . . . However, given not only the inherent motivation to malinger, but the fact that the claimant already has given ridiculously false answers on his IQ test (the most apparent motive for which seems to be the obtaining of disability benefits under this program), the child's actual intelligence level and past academic success, it seems quite clear that the decline in performance is in large part volitional and not a lack of ability. . . .

I am cognizant of the recent teacher's opinions which basically suggest that the claimant is markedly impaired. He may appear so in her class, but given the entire history, I believe that that is substantially volitional. Perhaps if he is so genuinely impaired, he might benefit from, as many children are, including the non-disabled, being held back a year. However, as of this point, the claimant has never repeated any grade according to the testimony of his mother and evidence of record . . . The claimant has the ability to perform is he chooses to do so as on the Alabama Reading and Mathematics Tests for the years of 2007 and 2008 which shows that the claimant achieved a level II (meets standards) for both reading and mathematics . . .

Generally speaking, for each grade, the ultimate measurement of a child's progress in acquiring and using information and attending and completing tasks is whether or not the child is promoted. Ordinarily, unless something to the contrary is noted in the child's record (which would be very unusual), the fact that a child is promoted to the next grade is prima facie proof that the child has acquired and used the information and attended to and completed the tasks of the previous grade in, at the very least, an adequate manner or in an acceptable fashion. Also, it is very common these days for non-disabled students, to be held back a grade or more for social and/or athletic purposes. For these reasons, it is certainly most unusual to find a child who is allegedly "disabled" for mental reasons, who has not repeated at least two grades in school or is not at least two years behind the grade that he or she ought to be in based upon chronological age. Indeed, it would be almost impossible logically to find that a child, who has not had to repeat at least one grade, is nonetheless markedly impaired in his or her abilities to acquire and use information and to attend to and complete tasks - since clearly, on the whole,

> that child has acquired and used information and attended to and completed the tasks of the grades that he or she was in, to, at the very least, a reasonably acceptable level.

(R. at 20-21)

After making these observations, the ALJ then considers each of the six domains of functioning. The ALJ states what each domain considers, states what the Social Security regulations provide and states what the Social Security regulations set forth as examples of limited functioning. Then, for each domain, the ALJ states the degree of limitation he finds N.L.C. has for that domain. What the ALJ fails to do is explain why he makes the findings for each domain. Of course, that might not be error if elsewhere in his opinion the ALJ had provided an explanation that provided reasons for his conclusions.

Certainly, the ALJ expressed reasons for concluding that N.L.C. does not have marked or extreme limitations in the domain of acquiring and using information. The ALJ correctly notes the N.L.C. met state standards in reading and mathematics, and that ability certainly suggests that any limitations in that domain are not marked or extreme. But, with respect to the other five domains, the ALJ provides no reasons or analysis of how he reached his findings. As this court has often noted, the Commissioner's regulations require that an ALJ must state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based*.

9

42 U.S.C. § 405(b)(1) (emphasis added).

The best exemplar of the ALJ's analytical failure in this case is encapsulated in one sentence: "Generally speaking, for each grade, the ultimate measurement of a child's progress in acquiring and using information and attending and completing tasks is whether or not the child is promoted." (R. at 21) There is absolutely no factual support for this conclusion. Moreover, whether a child is promoted to the next grade is a decision made by educators, and it is certainly not an answer to any of the six questions which must be asked about a child's ability to function in *each* of the six domains. *See* 20 C.F.R. § 416.926a(b)(2).

The fundamental error committed by the ALJ in this case is that he conflated the analysis of the six domains. The ALJ talked about N.L.C.'s intellectual abilities as if those abilities comprised the entirety of the domains. Manifestly, they do not. The ALJ found that N.L.C. had severe impairments of "attention deficient hyperactivity disorder (ADHD), inattentive type; anxiety disorder, NOS; and sexual abuse of a child, victim." (R. at 14) Those impairments obviously can affect a child's ability to function in any of the six domains. However, especially with regard to the domains of interacting and relating with others, moving about and manipulating objects, caring for oneself and health and physical well-being, the ALJ gives only conclusory statements of his findings which are unsupported by reasons or analysis.

**B. The Appeals Council Issue.** Because this case must be remanded for further proceedings, the court pretermits consideration of the issue concerning new evidence. The plaintiff will have an opportunity to present that evidence to the Commissioner on remand.

10

### III.  Conclusion

The ALJ erred because he failed to provide for each of the six domains a discussion of the evidence and the reason or reasons for his determination as to the degree of N.L.C.'s limitations in each of those domains.  In addition, the ALJ erred because he relied on a stale expert report of a state agency psychologist.  The case will be remanded to the Commissioner for further proceedings consistent with this opinion.

In addition to the foregoing, the court strongly suggests but does not order that upon remand, the Commissioner refer this case to another ALJ for further consideration.  It is evident that the ALJ in this case has lost his objectivity regarding this case.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after receipt of notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate final judgment will be entered.

Done this 27th day of March, 2012.

                                                 /s/Charles S. Coody
                                          CHARLES S. COODY
                                          UNITED STATES MAGISTRATE JUDGE